JOURNAL ENTRY AND OPINION
Defendant-appellant Abdul Hasan a.k.a. Stanley Cummings appeals from his jury conviction for aggravated theft in excess of $100,000.
On April 1, 1997, the City of Cleveland mistakenly transferred by wire $617,956.99 to the bank account of Black on Black Crime, Inc., a non-profit community service corporation. The funds should have been transferred to Cinergy, an energy supplier, for which the City maintained a similar account number. Neither Black on Black Crime nor any of its members had performed any services to earn the funds.
On May 28, 1997, defendant, who was chairman and treasurer of Black on Black Crime, and other members of the organization distributed the proceeds among themselves. Defendant transferred a total of $235,000 by cashier's check from the Black on Black Crime account into two personal accounts. He deposited $135,000 into a checking account and $100,000 into a savings account, both accounts in his own name. He subsequently used the funds in the checking account for various purposes.
Defendant, the organization Black on Black Crime, Inc., and members Eric Norvell, Derrick Washington and Arthur McKoy, were indicted in a single one-count grand theft indictment. The matter proceeded to a joint six-day trial against defendant, Black on Black Crime, Washington and McKoy. The prosecution presented testimony from ten witnesses. Defendant did not testify or present any witnesses. Only defendant McKoy testified on his own behalf.
The jury found all defendants guilty of aggravated theft as charged in the indictment. The trial court entered judgment on the jury verdict and sentenced defendant to imprisonment for three years. This appeal involves only defendant's conviction, his co-defendants having filed separate appeals. Defendant, through newly retained appellate counsel, raises three assignments of error.
Defendant's first two assignments of error challenge the sufficiency of the evidence to support his conviction:
 I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL MADE BOTH AT THE END OF THE STATE'S CASE AND AT THE END OF DEFENDANT'S CASE.
 II. THE EVIDENCE AT TRIAL FAILS TO INCLUDE ANY SHOWING THE APPELLANT INTENDED TO PERMANENTLY DEPRIVE THE CITY OF CLEVELAND OF THE $617,000 IN QUESTION, [SIC] THEREFORE, THE STATE FAILED TO PROVE THE "PURPOSELY" ELEMENT OF THEFT.
These assignments lack merit.
Defendant argues this criminal case should have been a civil matter and the prosecution failed to prove the defendant lacked the City's consent to exercise control over the funds. Defendant also contends that he had no purpose to permanently deprive the City of the funds.
The standard governing the sufficiency of the evidence to support a charge is well settled. "Pursuant to Crim.R. 29 (A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt." State v. Bridgeman
(1978), 55 Ohio St.2d 261, syllabus.
Stated otherwise, "the test is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." State v. Martin (1983),20 Ohio App.3d 172, 175. After reviewing the record in compliance with this standard, we conclude that the trial court properly denied defendant's motion for judgment of acquittal and that sufficient evidence supports his conviction for aggravated theft.
R.C. 2913.02 (A) defines the offense of aggravated theft in pertinent part as follows:
 (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services:
 (1) Without the consent of the owner or person authorized to give consent;
* * *
(3) By deception;
* * *
 (B) * * * If the value of the property or services stolen is one hundred thousand dollars or more, a violation of this section is aggravated theft, a felony of the third degree.
Defendant contends that he cannot be convicted of this offense because the City placed the funds in the Black on Black Crime bank account. In essence, he contends that because the City made a mistake by placing the funds in that account, it consented to defendant taking the money, placing it into his own bank accounts, and using it for his own personal purposes.
When viewed in the light most favorable to the prosecution, however, the record contains evidence the City did not consent to defendant's use of the funds, that defendant knew the payment was mistaken, and that neither Black on Black Crime nor defendant was entitled to the funds, because they had performed no services to earn them.
City Treasurer Mary Jackman specifically testified that the City did not either intend Black on Black Crime to be the recipient of the funds or consent to its use of the funds in any manner. Key Bank teller Gwendolyn Wren testified that she spoke to defendant about the Black on Black Crime account when he discovered the $617,956.99 balance. According to Wren, defendant, the Black of Black Crime treasurer, stated "it must be a mistake, maybe they mean $600.00." In response to his comments, Wren inquired into the source of the wire transfer and informed defendant that it came from "the City of Cleveland, National City Bank and that if he needed further information he could contact National City Bank."
McKoy stated that he believed one of two wealthy sports athletes may have donated the funds to the Black on Black Crime organization. Defendant apparently made the same comment to the bank teller. However, according to a bank employee, defendant was explicitly informed by the bank that the City of Cleveland had wired the funds. There was no evidence, moreover, that McKoy, defendant, or anyone else contacted either of the two athletes to determine whether they had been the source of the funds. Nor does the evidence indicate defendant believed the money was a gift. On the contrary, defendant signed a corporate resolution on behalf on Black on Black Crime labeling the funds as a "grant" rather than a "gift." He signed the resolution after he falsely informed Black on Black Crime members during a regular meeting that the organization was "almost out of money."
The Black on Black Crime organization, however, had not sought any grant from the City. Even if defendant believed the funds were a gift from the City, there is no indication that the City could lawfully consent to giving a gift of more than $600,000 from the public treasury to it for the personal use of its members. Black on Black Crime had one prior grant from the City for a maximum total amount of $10,000. The organization, however, had to submit invoices to obtain reimbursement before obtaining funds from the City by wire transfer, and had used only approximately $2,700 of the grant before it lapsed.
Defendant signed authorizations to transfer the funds from the Black on Black Crime account into a certificate of deposit in the name of Black on Black Crime and, later, to transfer the funds to himself and other members. Assistant Attorney General Monica Maloney testified that transferring funds for the personal benefit of members was not a lawful use of funds by a charitable organization.
Defendant took $235,000. He placed $100,000 into a personal savings account and the remaining $135,000 into a business checking account, not under the authority of Black on Black Crime. Among other things, defendant used the funds in his checking account to make gifts or no interest loans to his father and son. Under the circumstances, when the evidence is viewed in the light most favorable to the prosecution, reasonable jurors could find beyond a reasonable doubt that defendant exercised control over the funds without proper consent or by deception.
Defendant also contends there was insufficient evidence that he had the purpose to permanently deprive the City of the funds. R.C. 2901.22 (A) defines the term "purpose" as follows:
 A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intent to engage in conduct of that nature.
R.C. 2913.01 (C), in turn, defines the term "deprive" as follows:
(C) "Deprive" means to:
 (1) Withhold property of another permanently, or for such period as to appropriate a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;
 (2) Dispose of property so as to make it unlikely that the owner will recover it;
 (3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return therefor, and without reasonable justification or excuse for not giving proper consideration.
When viewed in the light most favorable to the prosecution, the record contains sufficient evidence that defendant "dispose [d] of property so as to make it unlikely that the owner would recover it" or "use[d], or appropriate[d] money with purpose not to give proper consideration in return therefor, and without reasonable justification or excuse for not giving proper consideration." Contrary to defendant's argument, the prosecution is not required to prove that his purpose was to permanently retain the property.
Accordingly, defendant's first and second assignments lack merit.
Defendant's third assignment follows:
 THE COURT IMPROPERLY ALLOWED THE TESTIMONY OF DETECTIVE JAMES BRADY BECAUSE HE WAS PRESENT DURING DEFENDANT HASAN'S IN-COURT COMPELLED DEPOSITION IN THE CIVIL CASE THAT WAS A VIOLATION OF HIS FIFTH AMENDMENT RIGHT, SPECIFICALLY AGAINST SELF INCRIMINATION; AND HIS TESTIMONY WAS TAINTED BY THIS.
This assignment lacks merit.
Defendant argues, in a one-page argument in his brief on appeal, that Detective James Brady's testimony was tainted by the fact that he attended a civil deposition at which defendant was compelled to testify. Defendant has not properly preserved this argument or shown reversible error.
Appellate briefs are required, at a minimum, to recite, interalia, a statement of facts relevant to the assignment of error with appropriate references to the record. App.R. 16 (A) (6). APP.R. 12 (A) (2) specifically provides "[t]he court may disregard an assignment of error presented for review if the party fails to identify in the record the error on which the assignment of error is based * * *." Defendant's brief on appeal fails to identify support in the record for his claims.
In the trial court, defendant's "Motion to Suppress Illegally Obtained Statements and Documents During Court Ordered Deposition of the Defendant Abdul Hasan (Oral Argument Requested)" was similarly perfunctory. The motion contended that the prosecution would have no evidence to support the criminal case against defendant, but for the civil deposition. The motion raised a general challenge to the use of the deposition and stated the deposition transcripts were filed with the trial court. It listed only eleven items by page and line number, without further specification of the content or context, to support the blanket objection.
The prosecution responded by noting that defendant failed to provide sufficient specificity for his motion to suppress as required by Crim.R. 47. The prosecution argued that if defendant was seeking to exclude defendant's deposition testimony, then the issue was moot because the state was not going to use the deposition at trial. The prosecution clarified, moreover, that it had obtained the information supporting its case from sources independent of defendant before he testified in the civil case beginning September 25, 1997. The prosecution's case was based on bank records, statements from bank employees, and statements from co-defendant Washington, another participant Norvell, and a Black on Black Crime secretary, who had cooperated with the police.
Stating that he had read the deposition transcripts, the trial judge ruled that the prosecution could not use the deposition at trial. Defendant's sole remaining concern related to statements made by Keybank employees Gwendolyn Wren and Donna Pinckney and a secretary of Black on Black Crime, Judy Martin. All the challenged statements were made by defendant to them in April, May, June, and August of 1997, but defendant contended that the police did not know their identities until after defendant identified them in his deposition testimony.
The prosecutor specifically refuted this claim and stated that all the statements from these witnesses were obtained before September 25, 1997. The trial court found it implausible that the police would not have talked to the bank employees involved in the transactions until defendant was deposed. The trial court specifically told defendant to file a supplemental brief to provide any additional support for his arguments and stated it would also review the matter further if circumstances warranted it at trial.
Before trial, defendant did not file a supplemental brief and never sought to suppress any testimony by Detective Brady. Moreover, none of his objections during Detective Brady's testimony at trial mentioned any Fifth Amendment issue. At trial, defendant's counsel was permitted to look at Brady's notes made during his investigation. Defendant's subsequent cross-examination of Brady did not provide any support for her claim that Brady obtained information from defendant.
Brady obtained the Keybank account records on September 8, 1997, weeks before defendant's September 25, 1997 deposition. Co-defendant Washington spoke to the police and said what he did with the money. Brady never spoke to defendant. At the conclusion of the case, defense counsel stipulated to the admissibility of various bank statement and checks.
Now, for the first time on appeal, defendant contends that the trial court should have excluded the testimony of Detective Brady, despite the fact that he never made such a request to the trial court. The following four sentences quote the entire relevant section of defendant's brief:
 Obviously, his [Brady's] entire testimony was tainted by whatever he learned at the deposition. That information could not be separated from the information he learned via just his [defendant's] criminal [sic] deposition.
 The only appropriate recourse was to prohibit the Detectives [sic] and frankly anybody else's testimony who was at the open in court Deposition where Defendant Hasan was ordered to testify even after asserting his fifth amendment rights.
Id. at 22.
We are unpersuaded for both procedural and substantive reasons. First, defendant did not properly preserve the argument he is now making. His motion sought to suppress only the deposition. See Civ.R. 32 (D) (4). The trial court prohibited use of the deposition at trial and the trial transcript shows that the civil deposition was not used at trial. Defendant never sought before trial to suppress the testimony of Brady, never requested a voir dire of him, and never raised a Fifth Amendment objection to admitting his testimony at trial.
The record unambiguously shows that defendant did not take the opportunity accorded by the trial court to file a supplemental motion to suppress, and thus to identify any evidence that Brady or anyone else had obtained as a result of defendant's testimony in the civil case. On the contrary, he could not even point out in the deposition where the investigators learned the identity of the bank employees or the Black on Black secretary who made statements to them.
The record on appeal does not contain defendant's civil deposition testimony. The record contains nothing whatsoever to show that any testimony by defendant was compelled in a civil case over defendant's assertion of his Fifth Amendment rights. The record contains no subpoena for defendant to testify or transcript of such a deposition. Moreover, the record does not contain any evidence that defendant ever asserted a Fifth Amendment right in such a deposition or that the trial court in the civil case compelled defendant to testify.
Finally, even apart from all of these procedural defects, we find defendant's argument unpersuasive. As a result of the facts set forth above, the trial court could properly find that Detective Brady did not use directly, indirectly, derivatively, or in any other manner, any compelled testimony of defendant. Under the circumstances, the trial court could properly conclude that the prosecution showed an independent basis for Brady's testimony.
Accordingly, defendant's third assignment of error lacks merit.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, J., and LEO M. SPELLACY, J., CONCUR.
 ______________________________ DIANE KARPINSKI PRESIDING JUDGE